# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **GIDEON J. SIPIN,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:26-cv-374-EGL** |
| | ] | |
| **THE BANK OF NEW YORK** | ] | |
| **MELLON TRUST COMPANY,** | ] | |
| **N.A. , et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION & ORDER

Gideon Sipin sued The Bank of New York Mellon Trust Company, National Association ("BNYM"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Onity Mortgage Corporation, formerly known as PHH Mortgage Corporation ("PHH"),[1] in state court. Defendants removed the case to this Court. Docs. 1; 1-1. Sipin then amended his complaint. Doc. 19. Defendants move to dismiss the amended complaint, arguing principally that Sipin's claims are barred by res judicata and collateral estoppel and that they otherwise fail to state a claim. *See generally* Doc. 20. For the reasons below, the motion (Doc. 20) is **GRANTED**.

---

[1] PHH Mortgage Corporation changed its name to Onity Mortgage Corporation effective March 23, 2026. Doc. 20 at 1 n.1. Because the parties' briefs and the orders in the prior action refer to this entity as PHH, the Court does the same.

## BACKGROUND[2]

This is the second federal action arising from Gideon Sipin's mortgage on his home at 5200 Meadowbrook Road in Birmingham, Alabama. In the first, *Sipin v. The Bank of New York Mellon Trust Co., N.A.*, No. 2:23-cv-00605 (N.D. Ala.) ("*Sipin I*"), Sipin challenged Defendants' authority to collect and foreclose on the same mortgage at issue here. The court entered judgment against him on February 2, 2026. *See* Final Judgment, Doc. 95, *Sipin I*. Sipin filed this action two days later. *See* Doc. 1-1 at 15.

Sipin obtained a mortgage in 2006 to refinance the debt on his home. Order at 2, Doc. 94, *Sipin I*. The original lender was Hometown Mortgage Services, Inc. Doc. 19 at 11. According to Sipin, the loan was later securitized into the RAMP 2006-RZ3 trust, with BNYM as trustee, PHH as servicer, and MERS as nominee on the mortgage. *Id.* at 8-9.

Two recorded assignments are central to this case. The first, recorded in the Shelby County Probate Court on June 7, 2010, purported to transfer the mortgage from MERS to BNYM as trustee. *Id.* at 12. The second, recorded on February 21, 2023, purported to assign the mortgage to BNYM c/o PHH. *Id.* at 14; Doc. 19-8 at

---

[2] These facts are drawn from the amended complaint, its attachments, and the public record in *Sipin I*.

1. The court in *Sipin I* identified both assignments in its summary of the undisputed facts. Order at 4, Doc. 94, *Sipin I*.

Sipin contends that both assignments are void. Doc. 19 at 12-15. He alleges that the 2010 assignment was executed by a signer with no documented authority to act for MERS, in reliance on fabricated authority documents, and that the 2023 assignment is a "temporal impossibility" under New York trust law because it purported to convey the mortgage into a trust that closed in August 2006. *Id.* Defendants dispute those allegations and maintain that the assignments and mortgage are enforceable. *See* Doc. 20 at 11-13.

The parties also dispute the loan balance. Sipin alleges that Defendants have asserted irreconcilable figures over time: $472,176.37 in the trust's September 2018 accounting records; $330,651.59 in a December 2023 response to the Consumer Financial Protection Bureau; $589,000.00 in Sipin's federal bankruptcy proceedings; and, by his estimate, more than $625,000 today based on unexplained charges. Docs. 19 at 16-17. He also cites deposition testimony from PHH's corporate representative, who allegedly could not explain the account's payment history or balance. *Id.* at 17.

But in *Sipin I*, the court determined that the undisputed evidence showed Sipin was in default. Order at 25, Doc. 94, *Sipin I*. Sipin signed documents modifying his mortgage loan, and PHH's records showed he made no mortgage payment after

March 2018. *Id.* at 5. The property has not been sold at a foreclosure sale, but Ocwen, PHH's predecessor, first initiated foreclosure proceedings in 2017, and Defendants and their agents have attempted to foreclose four times since. *Id.*

The court in *Sipin I* granted summary judgment to Defendants on February 2, 2026. *Id.* at 25-26. As relevant here, the court held that Sipin had produced no evidence that he timely paid his mortgage, that the undisputed evidence showed default, and that PHH had a right to foreclose through an enforceable security agreement after providing adequate notice. *Id.* at 17-18, 24-25. Sipin appealed. *See* Notice of Appeal, Doc. 96, *Sipin I*; *Sipin v. Bank of New York Mellon Trust Co., N.A.*, No. 26-10586 (11th Cir.). The Eleventh Circuit dismissed the appeal for want of prosecution on April 29, 2026, and reinstated it on May 26, 2026. *See* Orders, Docs. 100, 101, *Sipin I*.

One factual development postdates the judgment in *Sipin I*. On April 6, 2026, Sipin sent PHH a qualified written request ("QWR") under the Real Estate Settlement Procedures Act. Docs. 19 at 17-18; 19-4. According to Sipin, PHH acknowledged the request but routed it to litigation counsel rather than to its RESPA compliance department. Doc. 19 at 18.

Sipin again challenges the validity of the assignments and Defendants' authority to enforce the mortgage. His amended complaint asserts claims for quiet title, declaratory judgment, slander of title, violation of RESPA, violation of the Fair

4

Debt Collection Practices Act, violation of the National Bank Act, and injunctive relief. *Id.* at 18-29. Defendants move to dismiss, arguing principally that the judgment in *Sipin I* bars the claims. *See generally* Doc. 20.

### STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Court must accept well-pleaded factual allegations as true, that principle does not apply to legal conclusions couched as factual allegations. *Id*. Because Sipin proceeds pro se, the Court construes his filings liberally. Liberal construction, though, does not license the Court "to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009).

Res judicata and collateral estoppel are affirmative defenses. *See* FED. R. CIV. P. 8(c)(1). Still, they may be resolved on a Rule 12(b)(6) motion when the defense appears on face of the complaint and the materials properly considered at the

5

pleading stage. *See Concordia v. Bendekovic*, 693 F.2d 1073, 1075-76 (11th Cir. 1982). In deciding this motion, the Court may consider the amended complaint, the documents attached to it, and the public records of *Sipin I* without converting the motion into one for summary judgment. *See Adamson v. Poorter*, No. 06-15491, 2007 WL 2900576, at *2-3 (11th Cir. Oct. 4, 2007); *see also Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 n.2 (11th Cir. 2019) (explaining that res judicata and collateral estoppel may be raised on a Rule 12(b)(6) motion where the complaint rests on prior proceedings and their preclusive effect).

## ANALYSIS

Defendants' principal argument is that the judgment in *Sipin I* precludes most of Sipin's claims. *See generally* Doc. 20. The Court agrees.[3]

Claim preclusion bars claims that were raised or could have been raised in an earlier action when four requirements are met: "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*,

---

[3] Defendants ask the Court to strike Sipin's response because it runs twenty-four pages, nine more than the Court's Initial Order allows. Doc. 23 at 2; *see* Doc. 5 at 10. The Court declines to strike the response and has considered it in full. Sipin is cautioned, however, that his pro se status does not excuse compliance with the Court's orders, and future filings that exceed the Court's limits without leave may be stricken.

793 F.2d 1541, 1549 (11th Cir. 1986)). Two suits involve the same cause of action when the later claim arises from the same nucleus of operative fact as the earlier one. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999); *see Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th Cir. 2002).

Issue preclusion, traditionally called collateral estoppel, is narrower. It bars relitigation of an issue when (1) the issue is identical to one involved in the prior litigation, (2) the issue was actually litigated there, (3) its determination was a critical and necessary part of the prior judgment, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue. *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003); *I.A. Durbin, Inc.*, 793 F.2d at 1549. The doctrine reaches only issues actually litigated and necessarily decided, not every factual allegation, argument, or subsidiary point referenced in the prior case. *Cf. A.J. Taft Coal Co. v. Connors*, 829 F.2d 1577, 1580 (11th Cir. 1987).

*Sipin I* supplies the first three claim-preclusion requirements. It ended in a final judgment on the merits, entered on February 2, 2026, by a court of competent jurisdiction. *See* Final Judgment, Doc. 95, *Sipin I*. The parties here are the same as, or in privity with, the parties there. *Compare* Doc. 1 *with* Amended Complaint, Doc. 27, *Sipin I*. And the pendency of Sipin's appeal changes nothing, as a final federal

judgment retains its preclusive effect while an appeal is pending. *Jaffree*, 837 F.2d at 1467. Sipin's reliance on *Costello v. United* States, 365 U.S. 265, 285 (1961), is misplaced for the same reason. Doc. 22 at 13. Defendants' preclusion defense rests on the district court's judgment in *Sipin I*, not on the Eleventh Circuit's dismissal of the appeal.[4] *See* Doc. 20 at 6-10.

Nor can Sipin shrink the effect of the *Sipin I* judgment by parsing which order resolved which count. He argues that the summary-judgment order did not decide all of Defendants' claims, and that other claims were dismissed earlier at the pleading stage. Doc. 22 at 12-13. That distinction does not matter. Once *Sipin I* ended in a final judgment, the judgment bars every claim arising from the same nucleus of operative fact that was or could have been litigated in the action, including theories pleaded imperfectly, dismissed early, or never pressed at all. *Davila*, 326 F.3d at 1187; *Ragsdale*, 193 F.3d at 1239; *see also Baloco v. Drummond Co.*, 767 F.3d 1229, 1247 (11th Cir. 2014) ("Res judicata applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact which could have been raised in the prior case.") (citation modified).

---

[4] Sipin also charges Defendants with misrepresenting the status of his appeal. Doc. 22 at 1-2, 16-17. Their motion accurately reported the April 29, 2026 dismissal but omitted Sipin's April 30 motion to set the dismissal aside, which the Eleventh Circuit later granted. The omission does not affect the analysis because the judgment's preclusive force does not depend on the status of the appeal.

Nor does the deposition testimony of PHH's corporate representative reopen the question, contrary to Sipin's argument. Doc. 22 at 13-14. That testimony was part of the summary-judgment record in *Sipin I*, *see* Deposition of Richard Schwiner, Doc. 88-3, *Sipin I*, and the court found default on the undisputed evidence anyway, *see* Order at 25-26, Doc. 94, *Sipin I*. Sipin's argument that the evidence should have produced a different result belongs in his pending appeal, not a new lawsuit.[5]

As explained below, most of Sipin's claims arise from the same mortgage, the same property, the same assignments, the same alleged default, and the same asserted lack of foreclosure authority litigated in *Sipin I*. Claim preclusion therefore bars them. Several fail for the further reason that *Sipin I* necessarily determined that Sipin was in default, that adequate notice was provided, and that PHH had a right to foreclose through an enforceable security interest.

## I.    Count I: Quiet Title

Count I seeks to quiet title on the theory that the 2010 and 2023 assignments are void. Doc. 19 at 18-20. Claim preclusion bars it.

Both assignments predate *Sipin I*. The 2010 assignment was recorded more than a decade before Sipin filed that case. The 2023 assignment was recorded on

---

[5] Sipin also identifies a $12.4 million settlement allocation to the RAMP 2006-RZ3 trust in the ResCap bankruptcy as a "new operative fact." Doc. 22 at 14. He claims that it bears on unjust enrichment and unclean hands, but pleads neither of those in his amended complaint. *See generally* Doc. 19.

February 21, 2023, before Sipin filed *Sipin I* in April, and it was included within the record of that case: the court's summary-judgment order stated that "a second Assignment of [the] Mortgage to B[O]NYM c/o PHH Mortgage Corporation" was executed in February 2023. Order at 4, Doc. 94, *Sipin I*; *see* Ex. 4 to Schwiner Decl. at 40, Doc. 83-2, *Sipin I*.

Sipin claims that the 2023 assignment could not have been effectively litigated in *Sipin I* because it had been recorded only recently and had not yet undergone the "forensic" analysis on which he now relies. Doc. 22 at 11-12. That argument fails. The operative fact is the assignment, not Sipin's later analysis of it, and the assignment clearly predated his original action. A more developed theory does not create a new claim, and a party cannot avoid claim preclusion "by 'splitting' [the] claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." *Regan v. Metro. Life Ins. Co.*, 80 F. App'x 718, 721 (2d Cir. 2003); *accord Harrell v. Bank of Am., N.A.*, 813 F. App'x 397, 401 (11th Cir. 2020) ("A party may not avoid res judicata by recasting the same alleged conduct in a new cause of action or a new theory of recovery.") (citation modified). Because Sipin relies entirely on a new legal analysis of preexisting evidence, his claim is barred by claim preclusion.

Count I also fails under Alabama law. In *Johnson v. Beard*, the Alabama Supreme Court held that a mortgagor, being "a debtor instead of being a creditor of

the mortgagee," has "no right to impeach the validity of the assignment made by his mortgagee, or to inquire into the consideration passing between the mortgagee and his assignee." 9 So. 535, 536 (Ala. 1891).

Sipin reads *Johnson* as limited to disputes over consideration, Doc. 22 at 4-5, but that reading is too narrow. *Johnson* discussed consideration only after stating the broader rule that the mortgagor had no right to impeach the validity of the assignment, and stated those rules with a conjunctive "or," thereby establishing that these are two separate but interrelated prohibitions. *See Johnson*, 9 So. at 536. Sipin counters that *Johnson* and the cases following it govern only voidable assignments, while he alleges assignments void ab initio (the 2010 assignment because its signer had no documented authority to act for MERS, and the 2023 assignment because it purported to convey the mortgage into a trust that closed in 2006). Doc. 22 at 5-7. Neither of those theories, however, make the assignments void.

***First***, an agent's lack of authority ordinarily renders the resulting instrument voidable at the principal's election, not void. *See Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1204, 1224-25 (11th Cir. 2023) (collecting cases). The principal may ratify or disavow the unauthorized act, but a stranger to the transaction may do neither. *United States v. Heinszen*, 206 U.S. 370, 382-83 (1907). No evidence suggests that MERS has ever disavowed the 2010 assignment.

11

***Second***, courts construing New York law, including the Second Circuit, hold that a transfer into a securitized trust after its closing date is, at most, voidable by the trust's beneficiaries, and that a borrower who is neither a party to nor a beneficiary of the agreement cannot challenge it. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 88-91 (2d Cir. 2014); *Genrette v. Bank of N.Y. Trust Co., N.A.*, 808 F. App'x 77, 78 (3d Cir. 2020); *Shaver v. Barrett Daffin Frappier Turner & Engel, LLP*, 593 F. App'x 265, 273 (5th Cir. 2014). The sole case Sipin offers to support his position, *see* Doc. 19 at 11-12; Doc. 22 at 6-7, does not hold otherwise.[6] Sipin cites *Bank of New York Mellon v. Gales*, 116 A.D.3d 723 (N.Y. App. Div. 2014), for the rule that the New York Estates, Powers and Trusts Law § 7-2.4 "renders trustee acts in contravention of [a] trust void, not merely voidable." Doc. 19 at 12. But that case says no such thing, as it never cites §7-2.4, or the EPTL, at all. *See New York Mellon*, 116 A.D.3d at 723-25. In fact, it seems to prohibit what Sipin is attempting to do here, as it was recently cited for the proposition that a mortgagor lacks standing to challenge an assignment based on noncompliance with a pooling and servicing agreement. *See Wells Fargo Bank, N.A. v. Erobobo*, 127 A.D.3d 1176, 1178 (N.Y.

---

[6] Sipin cites "In re Salamon, 509 B.R. 360, 368 (Bankr. E.D.N.Y. 2014)" as holding that the "transfer of [a] mortgage into [an] RMBS trust after [its] closing date was void under EPTL § 7-2.4 because the trust lacked capacity to accept new assets post-closing." The Court is unable to find this case and suspects that it likely does not exist, as Sipin appears to rely on the assistance of artificial intelligence to generate his filings, thereby leaving him vulnerable to hallucinated citations. Sipin's apparent violation of Rule 11 of the Federal Rules of Civil Procedure will be addressed in a separate order.

12

App. Div. 2015). That corresponds well with the Alabama rule, and so in either case the defects Sipin alleges would make the assignments voidable at most, and as a stranger to the assignment, Sipin lacks standing to challenge it.

Sipin's fallback argument is that he has standing apart from his status as a mortgagor because he owns all the shares of PMTraining360, Inc., which he says holds legal title to the property. Doc. 22 at 7-9. That theory appears nowhere in the amended complaint, which alleges that Sipin himself "is the record owner and simple title holder of the Subject Property." Doc. 19 at 8; *see also id.* at 18 ("Plaintiff … holds the only lawful claim to title" of "the Subject Property").

A plaintiff may not amend his complaint through argument in a brief. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). And the theory fails on its own terms, as Sipin's corporation was no more a party to the assignments than Sipin was. In either case, Count I is due to be dismissed with prejudice.

## II.    Count II: Declaratory Judgment

Count II seeks declarations that the assignments are void, that Defendants hold no enforceable interest in the mortgage, and that they lack authority to enforce it or foreclose. Doc. 19 at 20-22. Claim preclusion bars this claim.

Count II arises from the same nucleus of operative fact as *Sipin I*. There, Sipin sought declaratory relief concerning the same mortgage and foreclosure dispute, and the Court entered summary judgment against him, holding that the undisputed

13

evidence showed default and that he was not entitled to a declaration that his loan was not in default. Order at 25, Doc. 94, *Sipin I*. Sipin now seeks different declarations, but the factual predicate is the same. He again challenges Defendants' authority to enforce the same mortgage against the same property by arguing the invalidity of the same assignments discussed in *Sipin I*. A plaintiff may not avoid claim preclusion by recasting the same dispute as a new request for declaratory relief. *Harrell*, 813 F. App'x at 401; *Ragsdale*, 193 F.3d at 1239; *Davila*, 326 F.3d at 1187.

Issue preclusion bars the core premise of Count II as well. The court in *Sipin I* held that Sipin made no mortgage payments after March 2018; that he produced no bank statements, account statements, receipts, or other documentation suggesting timely payment; and that the undisputed evidence showed default. Order at 16-25, Doc. 94, *Sipin I*. The court further held that PHH had a right to foreclose through an enforceable security agreement after providing adequate notice. *Id.* at 24-25. Those determinations were necessary to resolve Sipin's FDCPA and declaratory-relief claims. *See generally id.*

Sipin responds that the court's earlier order never actually decided the assignment-authority issues he now identifies, and that the court assumed the assignments' validity instead of adjudicating it. Doc. 22 at 12-16. The Court need not resolve that point. Even if the *Sipin I* court did not adjudicate every theory Sipin

can conjure to challenge the validity of the assignments, claim preclusion still applies to preclude those challenges because they each revolve around the same mortgage, assignments, default, and foreclosure disputes litigated in *Sipin I*, and could have been raised there. And to the extent Sipin seeks declarations inconsistent with the determinations made in *Sipin I* that he was in default and that PHH had a right to foreclose, issue preclusion bars those requests too. Count II is therefore due to be dismissed with prejudice.

## III.   Count III: Slander of Title

Count III asserts slander of title based on the recording of the 2010 and 2023 assignments. Doc. 19 at 21-22. Claim preclusion, however, bars it.

The recordings Sipin challenges occurred before *Sipin I*, and they concern the same mortgage, property, assignments, and foreclosure authority at issue there. The wrongful publication Sipin alleges was the recording of the assignments, and those recordings preceded *Sipin I*. Count III therefore arises from the same nucleus of operative fact and could have been raised in that case. Sipin's reliance on later "forensic" analysis of the recordings does not change that fact. *See supra* at 10.

Count III also fails as pleaded. Alabama law permits the owner of an estate in land to sue for "libelous or slanderous words falsely and maliciously impugning his title." ALA. CODE § 6-5-211. The claim requires ownership, falsity, malice, publication, disparagement of title, and special damages pleaded in detail.

*Merchants Nat'l Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981). The amended complaint's theory depends on the premise that Defendants lacked an enforceable interest in the mortgage, but *Sipin I* rejected that premise when it held that Sipin was in default, that adequate notice was provided, and that PHH had a right to foreclose through an enforceable security agreement. Order at 24-25, Doc. 94, *Sipin I*. Sipin cannot plausibly plead falsity or malice on a theory barred by the prior judgment. Nor does the amended complaint plead special damages with the required specificity, as it simply alleges injury in generalized and conclusory terms. Doc. 19 at 22. Count III is therefore due to be dismissed with prejudice.

## IV.    Count IV: Real Estate Settlement Procedures Act (RESPA)

Count IV asserts a RESPA claim against PHH based on its alleged failure to provide an adequate substantive response to Sipin's April 6, 2026 QWR. Doc. 19 at 23-25. Claim preclusion does not bar this claim. The alleged QWR postdates the February 2, 2026 judgment in *Sipin I*, and claim preclusion generally does not reach conduct occurring after the prior judgment. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955); *Manning v. Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992). But Count IV still fails as pleaded.

RESPA requires a servicer to acknowledge a QWR within five business days and to provide a substantive response within thirty days, excluding legal public holidays, Saturdays, and Sundays. 12 U.S.C. § 2605(e)(1)(A), (e)(2). Sipin alleges

16

that PHH acknowledged his request on April 16, 2026. Doc. 19 at 23-24. And he concedes that the period for a substantive response would not expire until on or about May 23, 2026, a month after he filed the amended complaint, promising that he "will supplement" once the deadline passed. *Id*.

On the face of the amended complaint, then, no violation existed when Count IV was filed. Sipin's prediction in his brief that the deadline would pass before the Court ruled, Doc. 22 at 18, does not cure the issue, as a plaintiff may not amend his complaint through briefing. *Gilmour*, 382 F.3d at 1315.

Defendants ask the Court to go further and dismiss with prejudice, arguing that any challenge to the adequacy of a response would relitigate issues decided in *Sipin I* and that Sipin cannot allege actual damages. Doc. 23 at 4-6. Those arguments are premature too. Whether PHH responded, what any response said, what damages (if any) followed, and how far the *Sipin I* judgment reaches a claim about the response all depend on facts not pleaded here. Count IV is therefore due to be dismissed without prejudice.

## V.    Count V: Fair Debt Collection Practices Act (FDCPA)

Count V asserts a claim under 15 U.S.C. § 1692f(6), alleging that PHH took or threatened nonjudicial action to dispossess Sipin of the property without a present right to possession through an enforceable security interest. Doc. 19 at 25-26. Claim preclusion and issue preclusion bar this claim.

17

A § 1692f(6) claim concerning enforcement of this security interest was litigated in *Sipin I*. The court there concluded that PHH was not a debt collector under the FDCPA except for purposes of § 1692f(6), and it then decided whether PHH had a present right to possession through an enforceable security interest. Order at 24-25, Doc. 94, *Sipin I*. It held that "PHH, because of Mr. Sipin's default, had a right to foreclose on his home through an enforceable security agreement, his mortgage, after providing him with adequate notice, which they did here," and the court granted summary judgment on the claim. *Id.* at 25. Sipin insists the FDCPA count was dismissed at the pleading stage rather than resolved at summary judgment. Doc. 22 at 12-13. The summary-judgment order, as quoted above, directly contradicts that claim.

Count V therefore seeks to relitigate the results of *Sipin I*. Sipin's new theory rests on the alleged invalidity of the assignments, but the claim again arises from the same operative facts: the same mortgage, property, default, assignments, and foreclosure authority. Claim preclusion bars the claim, even though the theory has changed. *See supra* at 10.

Issue preclusion applies as well. *Sipin I* necessarily determined that Sipin was in default, that adequate notice was provided, and that PHH had a right to foreclose through an enforceable security agreement. Order at 16-25, Doc. 94, *Sipin I*. Those determinations are inconsistent with Sipin's present allegation that Defendants had

18

"no present right to possession . . . through an enforceable security interest." Doc. 19 at 26. Sipin's reliance on the statute's "threatening to take" language, Doc. 22 at 18-19, does not help him. Whether the claim rests on action or threat, every § 1692f(6) theory requires the absence of a present right to possession through an enforceable security interest, *see* 15 U.S.C. § 1692f(6)(A), the very thing *Sipin I* decided against him. Count V is therefore due to be dismissed with prejudice.

## VI.    Count VI: National Bank Act

Count VI asserts a claim against BNYM under the National Bank Act, 12 U.S.C. § 92a, for breach of fiduciary duty as trustee. Doc. 19 at 26-28. The claim fails because § 92a creates no private right of action.

Section 92a empowers the Comptroller of the Currency to authorize national banks to act as fiduciaries. It confers no rights on borrowers, and "no court has ever held 12 U.S.C. § 92a contains an implied private right of action." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013); *see id.* at 986-87 (surveying circuits); *cf. Thompson v. St. Nicholas Nat'l Bank*, 146 U.S. 240, 251 (1892) ("[W]here the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties.").

19

Sipin responds that he does not seek damages under § 92a but instead invokes the statute as "a federal regulatory framework" establishing "the basis for equitable relief" against BNYM. Doc. 22 at 20-21. That argument fails. Even if his cause of action were interpreted as arising under a separate statute, such as § 1983, he must still show that the National Bank Act confers upon him a privately enforceable right at all, *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002), but no such right exists, *see Dutcher*, 733 F.3d at 987. Count VI must therefore be dismissed with prejudice.

## VII.  Count VII: Injunctive Relief

Count VII seeks an injunction preventing Defendants from enforcing the mortgage or proceeding with foreclosure. Doc. 19 at 28-30. An injunction is a remedy, not an independent cause of action. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1231 (11th Cir. 2021). No claim remains to support the requested relief. Count VII is therefore due to be dismissed with prejudice to the extent it is asserted as an independent cause of action.

## VIII.  Remaining Matters

Two matters remain. First, Defendants also seek dismissal under Alabama Code § 6-5-440, which forbids a plaintiff from prosecuting two actions at the same time for the same cause against the same party. Doc. 20 at 10-11; Doc. 23 at 8-9. Because every count is due to be dismissed on the grounds explained above, the

20

Court need not decide whether the statute independently requires dismissal or resolve the parties' dispute over whether a pending appeal keeps the first action "pending." *See* Doc. 22 at 16-17.

Second, Sipin asks in the alternative for leave to amend. Doc. 22 at 24. A request for leave to amend embedded in a response brief, unaccompanied by a motion or a proposed amendment, is not properly made. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *see also Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). The request also fails on its merits. Counts I, II, III, V, VI, and VII, fail on account of preclusion, and no amount of repleading can cure those defects, so amendment would be futile. *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 457 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). And Count IV is dismissed without prejudice, which preserves Sipin's ability to plead a ripe RESPA claim if the facts and law support one. If Sipin wishes to file a second amended complaint that is consistent with this order, he must file a motion seeking leave to file that complaint within 14 days of this order. Otherwise, the Court will close this case.

21

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss (Doc. 20) is **GRANTED**. Counts I, II, III, V, VI, and VII are **DISMISSED WITH PREJUDICE**. Count IV is **DISMISSED WITHOUT PREJUDICE**. If Sipin wishes to file a second amended complaint that is consistent with this order, he must file a motion seeking leave to file that complaint within 14 days of this order. Otherwise, the Court will close this case. Sipin's remaining motions (Docs. 25, 26, 31) are **DENIED AS MOOT**.

**DONE** and **ORDERED** this 22nd day of July, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE